# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00214-CR

**Jeffrey Rouse, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 2020119, HONORABLE BOB PERKINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Jeffrey Rouse appeals his conviction for robbery.  *See* Tex. Penal Code Ann. § 29.02 (West 2003).  Appellant waived trial by jury and entered a plea of guilty before the trial court.  Punishment was assessed at twelve years' imprisonment.

### POINTS OF ERROR

Appellant advances three points of error.  First, he claims his guilty plea was not knowingly and voluntarily entered.  Second, he argues that he was denied the effective assistance of trial counsel.  Third, appellant asserts that this cause should be remanded to the trial court for a hearing on his motion for new trial based, *inter alia*, on his claims his guilty plea was involuntary and that he was denied the effective assistance of counsel.

## BACKGROUND

This is an out-of-time appeal ordered by the Texas Court of Criminal Appeals in order to accord appellant "a meaningful appeal." A recitation of the facts is vital to the proper understanding of the issues.

The instant indictment alleged the primary offense of second-degree robbery on or about January 11, 2002. The second paragraph alleged a prior conviction for burglary of a habitation in Hays County occurring on September 23, 1988, which became final before the commission of the primary offense.[1] The third paragraph of the indictment alleged jointly prior convictions for burglary of a habitation in Travis County, both convictions occurring on June 24, 1988.[2]

On May 1, 2002, appellant appeared in open court with his retained counsel and waived trial by jury. His unitary trial[3] before the trial court, though not neatly structured, commenced with appellant waiving the reading of the indictment. When the trial court asked how he pleaded to the robbery charge, appellant responded: "Guilty." The trial court informed appellant that the range of punishment for robbery was not less than two years nor more than twenty years'

---

[1] *See* Tex. Penal Code Ann. § 12.42(b) (West Supp. 2007). We cite the current code for convenience. It is not materially changed from the law applicable to this case.

[2] There were no allegations as to the priority of the two convictions, both occurring on the same date. There were no allegations as to sequence. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2007). The State apparently believed that the indictment gave adequate notice to appellant and that it would prove the sequence required during trial in order to establish appellant as a habitual criminal.

[3] *See Barfield v. State*, 63 S.W.3d 446, 449-50 (Tex. Crim. App. 2001); *Williams v. State*, 191 S.W.3d 242, 258-59 n.5 (Tex. App.—Austin 2006, no pet.). In a unitary trial in a non-capital case, the issues of guilt and punishment should not be separated. *Lopez v. State*, 96 S.W.3d 406, 412 (Tex. App.—Austin 2002, pet. ref'd).

imprisonment with a possible fine not to exceed $10,000. A question of "habitualization" was mentioned and the trial court informed appellant that in view of allegations of prior convictions, he could be punished as a habitual criminal by a term of not less than twenty-five years nor more than ninety-nine years' imprisonment or life imprisonment. *See Id*. § 12.42(a) (West Supp. 2007).

The trial court then determined that there was no plea bargain in the case. Upon the tender into evidence of the "waiver of rights" by appellant's counsel, the trial court observed that in those papers, appellant was pleading guilty only to robbery but not to being a habitual criminal. The State insisted that it intended to establish appellant as a habitual offender. Upon questioning by the trial court, appellant stated that he was "maintaining" his guilty plea to "this charge of robbery, habitual."

Indicating that it believed appellant desired to testify, the trial court swore appellant as a witness. Appellant's counsel asked no questions. Appellant's entire testimony consisted of cross-examination by the State. Appellant admitted most of the bare allegations of the indictment as to the robbery, except that he denied he had kicked the victim in the torso as alleged. In this matter, he persisted. Appellant was not asked and did not testify about the facts surrounding the robbery offense.[4] Appellant did acknowledge his prior convictions as alleged, but offered no testimony as to the sequence required concerning the two June 14, 1988 convictions alleged in the third paragraph. *See id.* § 12.42(d) (West Supp. 2007).

---

[4] The facts surrounding the robbery offense were never developed. We are informed in appellant's brief that a customer in an Eckerd's Drug Store on January 11, 2002, saw appellant shoplifting certain items in the store. She alerted a clerk, followed appellant outside the store and confronted appellant. Apparently a struggle ensued. These facts were not introduced into evidence.

3

After appellant's testimony, the prosecutor introduced State's exhibit one. It was entitled "Defendant's Plea of Guilty, Waiver, Stipulation, Judicial Confession & The Admonitions of the court." This exhibit appears to be the same as the "Waiver of Rights" tendered by appellant. There was no stipulation of facts included nor was it sworn to by appellant, and thus, does not constitute a judicial confession. The exhibit reflected that appellant was entering a plea of guilty only to the robbery charge. At this junction, without more, the trial court accepted appellant's guilty plea to the charge of robbery and found him guilty only of that offense. Neither party had rested or closed. Nevertheless, the trial court immediately turned to the issue of punishment, noting that the State was recommending seventeen years' imprisonment but was open to a counteroffer. The trial court then addressed the lead prosecutor:

| The Court: | The Court has found him guilty of the offense of robbery. We're on punishment here at this time. The court has not made a finding yet or read the enhancement allegations to him yet, but we're on the deliberation of the punishment portion. So what do you—all—I understand you—all recommended 17 before? |
|---|---|
| Ms. Medina [prosecutor]: | Uh—huh, we did even though it was habitual. |

The prosecutor acknowledged, in response to the trial court's questions, that it would possibly recommend a lesser penalty if there were negotiations, but none had occurred.

At this point, the trial court inquired as to appellant's previous employment with the Railroad Commission. Appellant was permitted to address the trial court about his baseball injury and addiction to drugs. Appellant said that he did not know how the incident had escalated into a

robbery. Appellant's counsel recommended probation and drug treatment at the Central Texas Treatment Center. The trial court announced that it needed "to think about this more" and that it would decide the next morning.

**THE SECOND DAY**

The next day, May 2, 2002, the trial court stated that it had a proposed solution—"almost in the nature of a plea bargain" of ten years' imprisonment instead of proceeding with the enhancement provisions of the indictment. The trial court described the plea bargain as "unnegotiated" because the State and the defense were not parties to it. The trial court stated that "if this settlement is not accepted then—we need to go forward with the enhancement counts [allegations]." Appellant was confused and asked for an explanation. The trial court stated that if the proof showed appellant to be a habitual criminal, the minimum punishment would be twenty-five years' imprisonment. Appellant personally asked for a new attorney and another chance to renegotiate. A lengthy colloquy ensued between the trial court, appellant and, occasionally, his counsel. Appellant told the trial court of counsel's promises of probation and no prison time and said that otherwise, he would not have pleaded guilty. From time to time, appellant questioned whether the facts constituted robbery. Appellant and counsel began to argue. The trial court interrupted, stating that it would not grant probation and sided with defense counsel's version of statements made. Appellant's request to "start over again" was rejected.

When the appellant rejected the trial court's plea bargain offer of ten years' imprisonment, the trial court immediately assessed appellant's punishment at twelve years' imprisonment for robbery. Immediately thereafter, defense counsel agreed that appellant was ready

5

for sentencing, to which appellant responded, "What is going on here?"  After telling the trial court that he was misled and wanted a new attorney, appellant was sentenced.  The trial court then announced that it would not proceed with the enhancement allegations.

On June 3, 2002, appellant's counsel faxed to the court coordinator a document entitled "Motion for Appeal."[5]  This was 31 days after the imposition of sentence on May 2, 2002.  The motion mistakenly referred to the date of sentencing as May 3, 2002.  On June 6, 2002, the said motion for appeal was filed with the district clerk.  Other than the label on the motion, no mention of an appeal was made and there was no request for a new trial.

The motion for appeal signed and filed by appellant's retained trial counsel, as an officer of the court, alleged that prior to the plea, counsel had advised appellant that if the "sentence" imposed by the court was not acceptable to appellant, he could then withdraw his guilty plea.  The motion further alleged that counsel and appellant were of the same mind about these circumstances.  Counsel alleged in the motion that he learned on the day of sentencing that the trial court would not permit the withdrawal of the guilty plea and because appellant had entered the courtroom that day from a jail holding tank, counsel was never able to explain to appellant that the withdrawal of the plea would not be possible.  The motion concluded with a prayer that appellant now be allowed to withdraw his plea.  No action was taken on the motion after it was filed.

No motion for new trial was filed.  *See* Tex. R. App. P. 21.4(a).  No notice of appeal was filed.  *See* Tex. R. App. P. 26.2(a)(1), (2).  Other than the "motion for appeal," appellant's

---

[5]  The record does not reflect whether the district clerk or district judge accepted "faxed" documents for filing in criminal cases on the date in question, particularly a "fax" addressed to the court coordinator.  *See generally* Tex. Gov't Code Ann. §§ 51.801-.807 (West 2005).

counsel took no further action and, in effect, abandoned appellant. No appeal was taken although appellant had stated on the record his desire to appeal and was assured by the trial court that he had a right to appeal.

## POST-CONVICTION WRIT OF HABEAS CORPUS

On January 9, 2006, appellant acting pro se filed a post-conviction application for writ of habeas corpus. *See* Tex. Code Crim. Proc. Ann. art. 11.07 (West Supp. 2007). He complained therein *inter alia*, that he had been denied his right of appeal; that his guilty plea had not been freely, intelligently, and voluntarily made; that he had been misled by his trial counsel; and that he had been denied the effective assistance of counsel. Appellant further asserted that the trial judge had improperly engaged in plea bargaining and that when he refused the trial judge's plea bargain offer, the trial judge responded vindictively by adding two years to the sentence imposed.

On September 15, 2006, the trial court entered findings of fact concluding that appellant had been denied an appeal. The trial court recommended to the Texas Court of Criminal Appeals that appellant be given an out-of-time appeal.

On November 15, 2006, the Texas Court of Criminal Appeals issued an opinion granting appellant an out-of-time appeal so that a written notice of appeal could be given and appellant with the aid of counsel could obtain a "meaningful appeal." *Ex parte Jeffrey Rouse*, No. AP75, 551 (Tex. Crim. App. 2006) (unpublished). The opinion held that the date of the court's mandate in the case would be considered the date sentence was imposed for the purpose of the out-of-time appeal. All other considerations were held to be premature. *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

7

On December 11, 2006, the appellate court's mandate was issued. Appellate counsel was appointed for appellant, and a motion for new trial was timely filed, and presented to the trial court. *See* Tex. R. App. P. 21.4(a), 21.6. No date was set to hear the new trial motion, and no further action was taken by anyone. The motion for new trial was overruled by operation of law. *See* Tex. R. App. P. 21.8(c). Notice of appeal was timely given. *See* Tex. R. App. P. 26.2(a)(2).

## THE OUT-OF-TIME APPEAL

We turn first to appellant's third point of error, that this cause should be remanded to the trial court for an evidentiary hearing on appellant's motion for new trial. We examine the record to determine why the motion for new trial was not heard in this out-of-time appeal. The motion itself gives us our first clue. The bare assertions in the motion for new trial and the attached affidavit of appointed counsel are conclusory in nature and unsupported by any facts cited therein.[6]

---

[6] The bare assertions in the motion are:

1) Defendant's plea of guilty was not knowingly and voluntarily made because he was denied effective assistance of counsel in that his counsel. . .failed to properly advise Defendant as the law and facts applicable to the case.

2) Defendant was denied effective assistance of counsel. . . in that the Defendant was deceived by [counsel] into entering his plea of guilty.

3) The Defendant is actually innocent of the offense of robbery in that no robbery ever occurred.

4) That the Defendant was the victim of an illegal citizen's arrest.

5) That the indictment was "fundamentally defective."

8

The affidavit of appellant's appointed counsel, who had no connection with the guilty plea, simply swore that the facts contained in the attached motion were "true and correct to the best of my knowledge and belief." No facts were asserted in the affidavit itself.

A trial court abuses its discretion in failing to hold an evidentiary hearing on a properly presented motion for new trial raising matters not determinable from the record which could entitle the defendant to relief. *Martinez v. State*, 74 S.W.3d 19, 21 (Tex. Crim. App. 2002); *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000). As a prerequisite to obtaining a hearing, the motion and its supporting affidavit must show the truth of the grounds for attack. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). Otherwise, general entitlement to a hearing could lead to "fishing expeditions." *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). We conclude that appellant's motion and affidavit were insufficient to put the trial court on notice that reasonable grounds existed for relief. *See King*, 29 S.W.3d at 569; *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). Moreover, it has been held that it is the defendant's burden to ensure that a hearing is held within the 75 days after the imposition of sentence. *See Baker v. State*, 956 S.W.2d 19, 24-25 (Tex. Crim. App. 1997); *Keen v. State*, 85 S.W.3d 405, 411 (Tex. App.—Tyler 2002, pet. ref'd).

When an out-of-time appeal has been granted, it seems unusual that the trial court would allow a timely presented motion to be overruled by operation of law. In view of the case law, however, it is difficult to fault the trial court for lack of action because of the conclusory nature of the motion and affidavit. Appellant's third point of error is overruled.

**INVOLUNTARY GUILTY PLEA—AN EXAMINATION OF THE RECORD**

Without the benefit of an evidentiary hearing, and before we relegate appellant to a second post-conviction habeas corpus route, we turn to the appellate record itself to determine if there is any basis for granting appellant relief on his other points of error. In point of error one, appellant asserts that his plea of guilty was not knowingly and voluntarily entered. Appellant relies on the record before this Court.

To be consistent with due process of law, a guilty plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). To be "voluntary," a guilty plea must be the expression of the defendant's own will and not induced by threats, misrepresentations, or improper promises. *Brady v. United States*, 397 U.S. 742, 755 (1970); *Kniatt*, 206 S.W.3d at 664. A plea of guilty should not be accepted by the trial court unless it appears that it is voluntary. *See Holland v. State*, 761 S.W.2d 307, 320 (Tex. Crim. App. 1988). When a defendant enters a plea of guilty, the trial court must ensure that the defendant has a full understanding of what the plea connotes and its consequences. The record must affirmatively demonstrate that a defendant entered his guilty plea knowingly and voluntarily. *Brady*, 397 U.S. at 747 n.4; *Aguirre-Mata v. State*, 125 S.W.3d 473, 474 (Tex. Crim. App. 2003).

Our own statutory law also provides that no plea of guilty should be accepted by the trial court unless it is freely and voluntarily given. Tex. Code Crim. Proc. Ann. art. 26.13(b) (West Supp. 2007). "The purpose of this article is to assure that the defendant does not plead guilty

10

except with a full understanding of the charges against him and the consequences of his plea." *Basham v. State*, 608 S.W.2d 677, 678 (Tex. Crim. App. 1980).

A challenge to the voluntariness of a guilty plea is one of constitutional dimension. *See Meyers v. State*, 623 S.W.2d 397, 402 (Tex. Crim. App. 1981); *Fontenot v. State*, 932 S.W.2d 185, 192 (Tex. App.—Fort Worth 1996, no pet.). "The 'overriding concern' in reviewing the constitutional validity of a guilty plea is 'whether a defendant has been deprived of due process and due course of law.'" *Holland*, 761 S.W.2d at 322 (quoting *Ex parte Lewis*, 587 S.W.2d 697, 700 (Tex. Crim. App. 1979)). In determining the voluntariness of a guilty plea, the entire record must be considered. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975); *Burke v. State*, 80 S.W.3d 82, 93 (Tex. App.—Fort Worth 2002, no pet.).

There may be a number of reasons why a particular guilty plea may not be entered knowingly and voluntarily. One reason may be the inaccurate advice of counsel. Thus, when a defendant pleads guilty based on the erroneous advice of his counsel, the plea is not knowingly and voluntarily made. *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991); *see Morales v. State*, 910 S.W.2d 642, 646 (Tex. App.—Beaumont 1995, pet. ref'd). A guilty plea will not support a conviction where the plea is motivated by significant misinformation conveyed by defense counsel. *Ex parte Kelly*, 676 S.W.2d 132, 134-35 (Tex. Crim. App. 1984); *Cardenas v. State*, 960 S.W.2d

11

941, 943 (Tex. App.—Texarkana 1998, pet. ref'd); *Rivera v. State*, 952 S.W.2d 34, 36 (Tex. App.—San Antonio 1997, no pet.).[7]

A claim of a defendant, standing alone, is not sufficient to obtain relief. *Fimburg v. State*, 922 S.W.2d 205, 208 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). In such circumstances, we must determine whether the record supports the contention that the defendant's guilty plea was in fact induced by significant misinformation. *Russell v. State*, 711 S.W.2d 114, 116 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd).

---

[7] In a number of cases, the Texas Court of Criminal Appeals has reversed or set aside convictions because of inaccurate advice by a defense attorney which induced a guilty plea under circumstances similar to the instant case.

In *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991), it was held that when the decision to plead guilty is based on erroneous advice of counsel, the plea is not voluntarily and knowingly entered. In *Battle*, the attorney admitted informing his client that the client was eligible for probation when he was statutorily ineligible because the crime charged was sexual in nature. In *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex. Crim. App. 1984), a plea of guilty was held invalid as it was induced by counsel's direct misrepresentation to the defendant that the State had made a concession which, in fact, was not part of the plea bargain. In *Ex parte Young*, 644 S.W.2d 3, 5 (Tex. Crim. App. 1983), the guilty-plea conviction for aggravated robbery was set aside because of counsel's misinformation about parole eligibility. In *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980), the conviction was set aside because the attorney advised his client to plead guilty for a life sentence to avoid the death penalty, which was not in effect at the time in Texas.

Appellate courts have confronted the same problem. For example, in *Murphy v. State*, 663 S.W.2d 604, 610 (Tex. App.—Houston [1st Dist.] 1983, no pet.), the conviction was reversed because of counsel's inaccurate advice about the defendant's eligibility for probation. In *Rivera v. State*, 952 S.W.2d 34, 36 (Tex. App.—San Antonio 1997, no pet.), the plea of guilty was held involuntary where based on counsel's legal misinformation about the defendant's right to withdraw his guilty plea, similar to the facts in the instant case. In *Flowers v. State*, 951 S.W.2d 883, 886 (Tex. App.—San Antonio 1997, no pet.), a plea of nolo contendere was held involuntary where based on the understanding conveyed by counsel that the defendant would not be subject to incarceration as a condition of probation or otherwise.

In the instant case, after sentencing, appellant's counsel filed a "motion for appeal" as earlier described. Counsel, as an officer of the court, alleged that he had told appellant "that he (appellant) would be permitted to withdraw his [guilty] plea should the sentence provided to him by the court not be acceptable to him." Thus, counsel confessed that he conveyed this advice to appellant prior to the guilty plea. Counsel added that he and appellant were both of the same belief that the court would allow appellant to withdraw his plea should the court not provide a sentence acceptable to appellant. Counsel further alleged that after he learned the court would not permit withdrawal of the guilty plea, he had no opportunity to so advise appellant on the second day of the plea proceedings.

In a bench trial, a defendant's right to withdraw his guilty plea without assigning any reason ceases when judgment has been pronounced or the case has been taken under advisement. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979); *McWherter v. State*, 571 S.W.2d 312, 313 (Tex. Crim. App. 1978); *Williams v. State*, 191 S.W.3d 242, 259 (Tex. App.—Austin 2006, no pet.); *Saldana v. State*, 150 S.W.3d 486, 490 (Tex. App.—Austin 2004, no pet.); *Moreno v. State*, 90 S.W.3d 887, 889 (Tex. App.—San Antonio 2002, no pet.). Thereafter, the withdrawal of a guilty plea is within the wide discretion of the trial court. *William*s, 191 S.W.3d at 259; *see generally* 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 34.88 (2d ed. 2001).

In assessing competence, the Texas Court of Criminal Appeals has held counsel accountable for knowledge or the ability to obtain knowledge of relevant legal matters that are neither novel nor unsettled. *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999). The

13

circumstances under which a defendant may withdraw his guilty plea are ascertainable as a matter of law. *Rivera*, 952 S.W.2d at 35. Counsel had an obligation to provide appellant with accurate information and legal advice.

Supporting counsel's assertion that he believed appellant could legally withdraw his guilty plea at will if the penalty assessed was unacceptable is the fact that counsel never entered into any plea bargaining discussion with the State. This was true even though appellant was charged with robbery and several prior convictions that were alleged for enhancement of punishment. Even when the State made its punishment recommendations to the trial court, it indicated that it was still open to a plea bargain.

A number of appellant's personal remarks in open court during the plea proceedings support the fact that appellant had been given erroneous advice about the withdrawal of the guilty plea. Still other evidence clearly reflects appellant's lack of full understanding of what the plea connoted and the consequences thereof. Appellant's remarks also indicated that he was unsure that his actions constituted robbery as a matter of law.

The trial court told appellant that if the court's "plea bargain" offer of ten years' imprisonment was not accepted, the court would proceed to the "enhancement counts."[8] Appellant inquired: "What does that mean, enhancement counts?" The trial court explained that appellant

---

[8] Enhancement paragraphs in an indictment should not be referred to as "counts." *Pitts v. State*, 742 S.W.2d 420, 422 n.1 (Tex. App.—Dallas 1987, no pet.). Allegations of prior convictions are statements of historical fact used to enhance punishment; they do not allege a new charge or offense as does a "count." *See Rinehart v. State*, 463 S.W.2d 216, 218 n.1 (Tex. Crim. App. 1971); *Hathorne v. State*, 459 S.W.2d 826, 830 (Tex. Crim. App. 1970); *Becks v. State*, 420 S.W.2d 725, 727 n.1 (Tex. Crim. App. 1967); *Square v. State*, 167 S.W.2d 192, 193-94 (Tex. Crim. App. 1942).

could be convicted as a habitual criminal and the minimum punishment would be twenty-five years' imprisonment, and appellant responded:

> If I don't take the 10 years I don't have another chance at a new attorney? I want to get a new attorney. I don't have another chance at renegotiating this whole case down the line? It has to be 25 minimum?

The trial court pointed out that, "if we don't settle it [the case]," the court would proceed to the enhancement provisions, requiring appellant to plead to those allegations and that the minimum punishment would be imprisonment for twenty-five years. Appellant again responded:

> Your Honor, he [counsel] told me that if I pleaded guilty yesterday that I would get probation. That is the very reason I got up and said that I was guilty. I need to make this statement. The lady grabbed me outside, the citizen who made the citizen's arrest, she grabbed me. . . .

Upon inquiry, appellant's counsel stated that he only told appellant there was a possibility of probation. The trial court agreed with defense counsel's version. Appellant answered:

> He [counsel] said that there was no TDC [Texas Department of Corrections] time. He said that quote, unquote no TDC time. That's the only reason I got up there and pleaded guilty on this. I did not try to maintain control of that property. I tried to surrender that property to this party.

Appellant's counsel then stated that he told appellant the right of appeal was not being waived, and if dissatisfied with the court's ruling, the right of appeal was maintained. The trial court, in a colloquy, assured appellant of his right to appeal but stated he believed counsel's version about probation and no TDC time. Appellant then asked his counsel, "Did you say that?" An

15

argument between the two ensued in open court, ending when appellant asked the trial court, "Well, what are my options? Don't I have the right to start over on this?" After the trial court answered in the negative, appellant stated: "So then I go to trial." The trial court did not respond but asked if appellant accepted the plea-bargain offer of ten years. Appellant rejected the offer. The record then reveals:

| | |
|---|---|
| The Court: | Let the record reflect that the Court has offered to Mr. Rouse 10 years TDC. He has chosen not to do that, so at this time I am going to sentence your punishment at 12 years TDC.[9] |
| | On sentencing, is the Defense ready to proceed? Is the Defense ready? |
| [Defense Counsel]: | Yes, Your Honor. |
| The Defendant: | What is going on here? |
| The Court: | Are you ready to proceed to sentencing? |
| The Defendant: | No, sir, I'm not. |
| The Court: | Can you state any reason why you should not be sentenced at this time? |
| The Defendant: | I need a new attorney. |
| The Court: | Well, you can get a new attorney later on. I don't think you can fire your lawyer at this late hour now. Is there any reason you can state to the Court as to why you should not be sentenced now? |
| The Defendant: | Because I was misled. |

---

[9] The Texas Department of Corrections is now the Texas Department of Criminal Justice—Institutional Division.

The Court:               I don't believe that's true.

The Defendant:      I'm sorry.

Thereafter, the trial court formally sentenced appellant to twelve years in the Texas Department of Criminal Justice—Institutional Division for robbery. The trial court then announced it would not proceed on the "enhancement counts." There was no comment from the State.

## THE TRIAL COURT'S OWN PLEA BARGAIN

Some of the strongest evidence that appellant was given erroneous advice about plea withdrawal is the fact that appellant rejected the ten-year plea bargain offered by the trial court even in the face of an implied threat of finding appellant a habitual criminal. Moreover, the court's own offered plea bargain could give the appearance of judicial coercion affecting the voluntariness of a defendant's plea.

Trial judges in our federal system are expressly forbidden from participating in plea agreement discussions. Fed. R. Civ. P. 11(c)(1); *Perkins v. Court of Appeals*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987). Although Texas trial judges are not expressly prohibited from participating in plea bargaining agreements, the Texas Court of Criminal Appeals has nevertheless cautioned trial judges not to participate in plea bargaining agreements until an agreement has been reached between the prosecutor and the defendant and his counsel. *See id.* (citing *Ex parte Williams*, 704 S.W.2d 773, 777 n.6 (Tex. Crim. App. 1986)). The reason for this concern is that the trial court should always avoid the appearance of coercion or prejudgment of a defendant since such inference might affect the voluntariness of the plea. *Id.* (citing *State ex rel. Bryan v. McDonald*, 662 S.W.2d

17

5, 9 (Tex. Crim. App. 1983); *Ex parte Shuflin*, 528 S.W.2d 610, 616-17 n.1 (Tex. Crim. App. 1975); *Kincaid v. State*, 500 S.W.2d 487, 490-91 (Tex. Crim. App. 1973)); *see also Jennings v. State*, 754 S.W.2d 389, 392 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (noting that any agreement of trial court as part of plea bargain would constitute impermissible judicial coercion and render plea involuntary).[10]

In fact, in *McDonald*, the Texas Court of Criminal Appeals held that judicial involvement in plea negotiations runs afoul of due process and fundamental fairness, in several ways.[11]

---

[10] In addition to the cases cited, *see also* Tex. Code Jud. Conduct, Canon 3(B)(8), *reprinted in* Tex. Gov't. Code Ann., tit. 2, subtit. G. app. B (West 2005). The American Bar Association Standards Relating to the Administration of Criminal Justice—Pleas of Guilty, Section 3.3(a) (Final Draft—1974) provides, "The trial judge should not participate in plea discussion." *See also* American Bar Association Standards Relating to the Administration of Criminal Justice—Functions of the Trial Judge Section 4.1(a) (Final Draft—1974).

[11] In *State ex rel. Bryan v. McDonald*, 662 S.W.2d 5 (Tex. Crim. App. 1983), the Court observed several ways that judicial participation in plea bargaining could run afoul of due process of the law:

> First, the trial court's role as neutral arbiter between competing parties is compromised as the court seeks to convince the defendant to accept its proffered plea.
>
> Second, rejection of the court's offer by a defendant creates the possibility of prejudice against the defendant on the court's part whether or not such prejudice is conscious or intentional.
>
> Third, the trial court's power over the defendant gives it an uneven advantage in the negotiations and brings home to the defendant the possibly unhappy consequences of rejecting the court's offer.

Upon the entry of the plea of guilty and all proper procedures being followed, the trial court, within its wide discretion, could have assessed appellant's punishment for the second-degree felony of robbery within the range of punishment from two-to-twenty years' imprisonment and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. § 12.33 (West 2003). If the trial court had decided that ten years' imprisonment was the proper punishment, that penalty could have been imposed in this non-negotiated plea case without being couched in terms of the trial court's own plea bargain. That is not what happened here.

When appellant hesitated, the trial court pointed out that if its offer were rejected, the State would be allowed to proceed to establish that appellant was a habitual criminal. *See id.* § 12.42(d). When pressed for an answer, appellant expressly rejected the plea bargain. The trial court immediately assessed appellant's punishment at twelve years' imprisonment.

**CONCLUSION**

In the instant case, appellant's trial counsel, who had abandoned him on appeal, directly admitted in the "motion for appeal" that he had given appellant erroneous information about the withdrawal of the guilty plea, that appellant was of the belief that he could withdraw his plea at will, and that counsel never corrected the misinformation after counsel learned the contrary. Such

---

Finally, during the course of negotiations between the court and the defendant, the defendant may very well make explicit or implicit admissions or confessions that would not normally be admissible before the court during formal trial. *See United States v. Adams*, 634 F.2d 830 (5th Cir. 1981); *United States ex rel. Elksnis v. Gilligan*, 256 F. Supp. 244 (S.D.N.Y. 1966).

*Id.* at 9.

19

significant misinformation was outside the competency of counsel in criminal cases.  Further, the record confirms that appellant acted in accordance with such misinformation to his detriment. Additionally, the trial court engaged in plea bargaining with the implied threat of greater punishment if its plea bargain were rejected.  When appellant rejected the plea bargain, apparently relying on counsel's misinformation, the trial court in sentencing, added two years to the plea offer.  The record as a whole shows appellant's guilty plea was not freely, voluntarily, knowingly, and intelligently entered that appellant was not accorded due process and due course of law, which is the overriding concern.  *Ex parte Lewis*, 587 S.W.2d at 700.  The first point of error is sustained.

As this point of error is dispositive of the appeal, we do not reach the second point of error, alleging ineffective assistance of trial counsel.  *See Rivera*, 952 S.W.2d at 36; *see also Burke v. State*, 80 S.W.3d at 82, 95 (Tex. App.—Fort Worth 2002, no pet.).

The judgment of conviction is reversed and the cause remanded to the trial court for further proceedings.

_____

John F. Onion, Jr., Justice

Before Justices Pemberton, Waldrop and Onion*

Reversed and Remanded

Filed:   June 27, 2008

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).